**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**


**PATRICK WOODALL,**                                    05-CV-181-BR

          **Plaintiff,**                               OPINION AND ORDER

**v.**

**JO ANNE B. BARNHART,**
**Commissioner of Social**
**Security,**

          **Defendant.**


**RORY LINERUD**
LINERUD LAW FIRM
PO Box 1105
Salem, OR 97308
(503) 587-8776

          Attorneys for Plaintiff

**KARIN J. IMMERGUT**
United States Attorney
**NEIL J. EVANS**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1024


1  -  OPINION AND ORDER

**MICHAEL McGAUPHRAN**
Office of the General Counsel
**DAVID R. JOHNSON**
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2545

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Patrick Woodall brings this action for judicial

review of a final decision of the Commissioner of Social Security

denying his applications for disability insurance benefits (DIB)

and supplemental security income payments (SSI) under Titles II

and XVI of the Social Security Act.  This Court has jurisdiction

under 42 U.S.C. §§ 405(g) and 1383(c)(3).

     For the reasons that follow, the Court **AFFIRMS** the

Commissioner's final decision.


<u>**BACKGROUND**</u>

     Woodall was born on September 17, 1962.  He completed high

school and worked as a short-order cook, in-home attendant for

Senior and Disabled Services, taxi driver, and forklift operator.

Tr. 82, 469.[1]  Woodall last worked on June 15, 2000, when he was

_____

     [1] Citations to "Tr." refer to the page(s) indicated in the
official transcript of record filed with the Commissioner's
Answer.

fired for reasons unrelated to his health or to any alleged functional impairment.  Tr. 81.

Woodall asserts he became disabled on March 15, 2000, due to a ruptured disc with nerve damage causing severe pain in both legs, hot spots, and numbness.  He also alleges he is unable to stand or to sit for long periods or to use his shoulders and arms to lift objects.  He asserts he must lay down for short periods throughout the day.  Tr. 81.

## DISABILITY ANALYSIS

The initial burden of proof rests on the claimant to establish disability.  *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ."  42 U.S.C §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner has established a five-step sequential process for determining whether a person over the age of 18 is disabled within the meaning of the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  *See also* 20 C.F.R. §§ 404.1520, 416.920. Woodall challenges the ALJ's evaluation of the evidence and conclusion at Step Five.

3  -  OPINION AND ORDER

To make a determination at Step Five, the ALJ must first assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a).  *See also* Social Security Ruling (SSR) 96-8p.

The Commissioner then must determine whether the claimant is able to do any work in the national economy.  *Yuckert*, 482 U.S. at 141-42.  *See also* 20 C.F.R. §§ 404.1520(e),(f), 416.920(e),(f).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do.  *Yuckert*, 482 U.S. at 141-42.  *See also* *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1).


## THE ALJ'S FINDINGS

The ALJ found Woodall's ability to perform basic, work-related activities is limited by "severe spinal impairment." Tr. 23.  The ALJ also found Woodall has "drug abuse/dependency," which causes mild limitations in his social functioning, his ability to maintain concentration, his persistence or pace, and his activities of daily living.  Tr. 24.

The ALJ assessed Woodall's RFC as follows:

4  -  OPINION AND ORDER

> [T]he claimant retains the residual
> functional capacity to perform a reduced
> range of light and sedentary exertional level
> work.  The claimant can lift/carry up to 20
> pounds on an occasional basis and lift/carry
> up to 10 pounds frequently.  He would need to
> apply safe lifting techniques.  The claimant
> can stand/walk for two hours in an 8-hour
> workday. The claimant can sit for six hours
> in an 8-hour workday.  The claimant is
> precluded from using his left leg to operate
> foot controls.  Stooping, kneeling,
> crouching, balancing, crawling, and climbing
> ramps/stairs/ladders/ropes/scaffolds is
> limited to an occasional basis (maximum one-
> third of day).  The claimant needs to avoid
> hazardous conditions, such as moving
> machinery, due to his medications.

Tr. 26-27.

The ALJ found Woodall could not perform any of the work he had done in the past, but the ALJ concluded Woodall retained the RFC to perform other work in the national economy.  Tr. 28.  The ALJ relied on testimony from an impartial vocational expert (VE), who opined a person of Woodall's age, education, past work experience, and RFC could work as a storage-rental clerk, automatic photo-developer, or charge-account clerk.  Tr. 28.

The ALJ concluded Woodall was not disabled at any time through the date of the ALJ's decision and was not eligible for benefits under Titles II or XVI of the Social Security Act.  Tr. 28-30.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision, however, must be upheld even if the "evidence is susceptible to more than one rational interpretation."  *Andrews*, 53 F.3d at 1039-40.

## DISCUSSION

Woodall contends the ALJ failed to assess accurately his RFC because the ALJ improperly evaluated the evidence and failed to develop the record fully.  Woodall asserts the ALJ's errors led him to elicit legally inadequate testimony from the VE.  Woodall also contends the ALJ failed to properly evaluate the role of substance abuse as required by the regulations.

I.    **Woodall's RFC**

Woodall contends the ALJ erred when he failed to accurately assess Woodall's RFC.  Woodall specifically contends the ALJ improperly discredited his testimony and the medical-source statements of his treating physician, misinterpreted the findings of agency-reviewing physicians, and failed to order a consultative evaluation of Woodall's mental impairments.

A.    **Credibility Determination**

Woodall testified he has constant pain in his lower left back radiating to his left buttocks and left leg.  Even with daily medications (including narcotics), the pain remains at a severity of 6 or 7 on a scale of 0 to 10 where 0 represents no pain and 10 represents unbearable pain.  Tr. 450-51, 454, 456.

Woodall testified he has to lie down during the day about five minutes out of every hour if he has to do a lot of driving. Tr. 458-59.  He can sit or stand for about 30 minutes at a time. Tr. 459-60.  He can walk about 50 yards, and then he has to sit down to rest.  Tr. 460.  He spends most of his time alternating sitting and standing with hourly breaks to lie down.  Tr. 461. The ALJ found Woodall's testimony was not wholly credible. Tr. 25.

The ALJ must provide clear and convincing reasons for discrediting a claimant's testimony regarding the severity of his symptoms.  *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

7  -  OPINION AND ORDER

*See also Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996).
He may consider objective medical evidence and the claimant's
treatment history as well as the claimant's unexplained failure
to seek treatment or to follow a prescribed course of treatment.
*Id.* at 1284.  The ALJ may consider the claimant's daily
activities, work record, and observations of physicians and third
parties with personal knowledge about the claimant's functional
limitations.  *Id*.  In addition, the ALJ may employ ordinary
techniques of credibility evaluation such as prior inconsistent
statements concerning symptoms and statements by the claimant
that appear to be less than candid.  *Id*.  *See also* SSR 96-7p.

The ALJ found Woodall's testimony disproportionate to the
objective medical findings.  In January 1998, Mark Belza, M.D.,
performed a microdiscectomy to relieve Woodall's ongoing symptoms
of S1 radiculopathy.  Tr. 255.  MRI studies in October 2000 and
September 2001 showed a small recurrent, left-sided disc
protrusion at L5-S1.  Tr. 225-26, 258.  The radiologist opined
clinical correlation would be necessary to determine whether
these findings were significant.  Tr. 258.

Contemporaneous clinical findings did not support disabling
symptoms.  For example, in November 2000, Woodall reported he was
essentially bedridden by chronic lower left-sided pain and got up
only to prepare quick meals.  David Stewart, M.D., found
symmetrical muscle mass in the lower extremities with no wasting

8  -  OPINION AND ORDER

on the left.  Woodall demonstrated give-way weakness with sudden

discontinuance of resistance throughout the left leg in a manner

atypical of true muscle weakness and inconsistent straight-leg

raises when sitting and lying down.  Dr. Stewart, however, did

not believe these were true signs of L5-S1 radiculopathy.  253-

55.

     Similarly in February 2002, Kent Yundt, M.D., found Woodall

had normal muscle bulk and tone with full and symmetrical

strength "except for clear giveaway weakness throughout the

testing showing marked pain behavior."  Tr. 251.  Woodall

demonstrated inconsistent pain responses with a positive

Waddell's sign.  He described relief by bending over in a manner

inconsistent with the mechanical low-back condition he reported.

He also reported bilateral leg pain in a manner inconsistent with

the left-sided disc protrusion suggested by the MRI studies.

Tr. 251-52.

     Woodall then had a myelogram study that showed significant

degeneration at L5-S1 with truncation of the S1 nerve root.  At a

follow-up visit, however, Dr. Yundt obtained an invalid strength

examination due to give-way cogwheeling weakness throughout the

left lower extremity.  Tr. 250.

     Woodall's treatment history also suggests his pain reports

to treating sources could have been influenced by a motivation to

obtain narcotics.

9  -  OPINION AND ORDER

Woodall alleges disability beginning in March 2000, but he did not re-contact his neurosurgeon, Dr. Belza, until October 10, 2000.  This corresponds roughly with his discharge from the care of his primary-care physician for failure to comply with a narcotic pain medication contract.  Tr. 208, 217.  Woodall reportedly agreed to undergo a repeat microdiscectomy. Tr. 225-26.  A few days after Woodall obtained narcotics, Dr. Belza indicated Woodall was "not interested in surgery in that he wants to remain on narcotics."  Tr. 223.

Woodall then was treated by John Rask, M.D., for pain management.  Dr. Rask described Woodall as "quite manipulative" in his interactions and also self-advancing with his medication dosage and avoidance of in-person visits.  Dr. Rask determined it was in Woodall's best interest to terminate treatment with narcotics "given the benign nature of his pain process" and "the tendency he appears to have to overuse."  Tr. 245-46.

Woodall then established care with Jeffrey Absalon, M.D. Dr. Absalon declined Woodall's request to reinstate treatment with narcotics and recommended exercise and physical therapy.  He noted Woodall's pain pattern did not appear to change after being off of narcotic pain medication.  Tr. 279-80.

Woodall then established care with Joshua Haber, M.D., in April 2002.  Dr. Haber initially declined to prescribe narcotics and instead administered a series of steroid injections into the

10 -  OPINION AND ORDER

spine and sacroiliac joints.  In September 2002, however, he
noted these procedures had not given Woodall any notable benefit.
He told Woodall that his options were chronic pain management or
surgical intervention.  Tr. 390.  Woodall has relied primarily on
narcotics and inactivity to manage his pain since that time.

Through frequent changes in providers, Woodall avoided
potentially effective treatment approaches such as the one
recommended by Ray Tatyrek, Ph.D.  Dr. Tatyrek recommended a
multidisciplinary program that included physical therapy,
psychological counseling, and medical treatment rather than mere
reliance on medication and inactivity.  Tr. 266-70.

The ALJ also noted Woodall's work history reflected poorly
on his credibility.  For example, Woodall was not compelled to
stop working by his alleged functional impairments.  He alleged
disability beginning March 15, 2000, and yet he continued to work
until he was fired on June 15, 2000.  Even then his termination
did not reflect an inability to perform his work functions.
Woodall, in fact, was fired for leaving his workplace without
permission for the purpose of picking up his son.  Tr. 81.  He
testified he lost his job as a care-giver when he was fired
after being slapped by the elderly woman he was hired to assist.
Tr. 444-45.

In addition, the ALJ pointed out that Woodall did not appear
to be in pain or distress during office visits to doctors or at

11 -   OPINION AND ORDER

the hearing contrary to his assertion of constant severe pain.
Tr. 26.  He also did not require a break to lie down during the
hearing nor did he alternate positions to relieve any apparent
pain.

In addition, Woodall is the sole provider for his 14 year-
old son, was the primary care-giver for his terminally ill father
until his death, and now takes care of his ill brother.  The ALJ,
therefore, reasonably could conclude these circumstances require
Woodall to engage in activities that are inconsistent with the
degree of functional limitation that he asserts.

Based on the foregoing, the Court finds the ALJ reasonably
could conclude from the indications of Woodall's unreliable pain
behavior, Woodall's manipulative interactions with medical
sources, and Woodall's frequent changes to avoid providers who
would not prescribe narcotics that he was not candid when
describing his pain.  The ALJ also reasonably could conclude
Woodall is self-limiting his activity in a manner that is not
medically necessary.

Accordingly, the Court concludes the ALJ did not err when he
concluded Woodall's testimony was not wholly credible because the
ALJ provided sufficient reasons supported by the record for doing
so.

B.     **Medical Source Statements**

Dr. Haber performed a consultation for low left-sided back
pain in April 2002.  He reviewed existing MRI and CT myelogram
studies and treatment records and recommended epidural steroid
injections and physical therapy.  Tr. 398-400.  As noted,
Woodall did not experience any significant relief, and Dr. Haber,
therefore, reinstated long-term pain management with methadone.
Tr. 389-90, 394-97.

In November 2002, Dr. Haber completed a worksheet in which
he indicated Woodall could lift and carry no more than five
pounds, stand or walk for no more than 15 minutes at a time for a
total of one hour in an eight-hour day, and sit for no more than
30 minutes at a time for a total of one hour in a workday.
Tr. 291.  He opined Woodall needed to lie down or to recline
every 30 to 45 minutes for 10 to 15 minutes.  Tr. 292.  Dr. Haber
later completed an identical worksheet in which he indicated
Woodall's impairments remained essentially the same in July 2004.
Tr. 416-17.

If a treating physician's opinion is not contradicted by
another physician, the ALJ may only reject it for clear and
convincing reasons.  *Thomas v. Barnhart*, 278 F.3d 947, 956-57
(9th Cir. 2002).  The ALJ may reject the treating physician's
opinion in favor of the conflicting opinion of another treating
or examining physician if the ALJ makes "findings setting forth

13 -   OPINION AND ORDER

specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id*. at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ gave minimal weight to Dr. Haber's worksheet assessments because they were predominantly based on his unquestioning acceptance of Woodall's subjective statements. Tr. 26.  Dr. Haber reviewed diagnostic images to reach his diagnosis of a disc protrusion, but he did not perform a physical capacities evaluation or consult such an evaluation by any other medical source before reaching his conclusions about Woodall's functional limitations.  Instead Dr. Haber relied entirely on Woodall's subjective statements regarding his functional limits.

As noted, the ALJ found Woodall's subjective statements were disproportionate to the objective findings, and the ALJ stated clear and convincing reasons supported by the record for rejecting those statements as not wholly credible.  An ALJ properly can reject a physician's opinion regarding disability when it is premised on the claimant's own subjective complaint of disabling pain that the ALJ already has discounted.  *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989).  *See also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Woodall further objects to the ALJ's statement that other physicians "implicitly disagreed with Dr. Haber's course of treatment."

14 -  OPINION AND ORDER

Tr. 26.  The ALJ accurately found, however, that many treating
and examining physicians declined to continue providing narcotics
to Woodall.  Other physicians also opined Woodall's use of long-
term narcotics would be appropriate only as part of a
comprehensive approach with physical therapy, training, and
counseling.

Accordingly, the Court finds the ALJ did not err when he
discounted the weight of Dr. Haber's opinions because the ALJ
provided sufficient reasons supported by the record for doing so.

C.    **RFC Assessments of Agency Consultants**

The Commissioner may rely on medical consultants to make
findings of fact about the nature of a claimant's impairments and
the severity of the claimant's functional limitations.  20 C.F.R.
§§ 404.1527(f), 416.927(f).  *See also* SSR 96-6p.  Such reviewing
sources do not treat or examine the claimant, and, therefore,
their opinions are held to stricter standards and are given
weight only to the extent that they are supported by the record
and consistent with the record as a whole.  SSR 96-6p.

Martin Kehrli, M.D., and Charles Spray, M.D., reviewed the
medical evidence from all treating and examining sources in the
record and concluded the evidence supported an RFC of light
exertion with postural limitations.  Tr. 231-35, 285-90.  On
the standard RFC worksheet, both consultants placed an "x" to
indicate that Woodall is "limited in lower extremities."

15 -  OPINION AND ORDER

Tr. 233, 287.

The ALJ apparently agreed with Drs. Kehrli and Spray because his RFC assessment included significant limitations on lifting, carrying, walking, standing, sitting, stooping, kneeling, crouching, crawling, balancing, and climbing, which are all activities that involve the use of the left leg.  In addition, the ALJ found Woodall "is precluded from using his left leg to operate foot controls."  Tr. 26.

Woodall contends the ALJ's RFC assessment did not accurately describe his left-leg limitations because the ALJ only focused on the limited use of Woodall's left foot.  The Court, however, finds Woodall misstates the ALJ's RFC assessment.

Accordingly, the Court concludes the ALJ did not err in his RFC assessment of Woodall because the limitations in the RFC are supported by the record as a whole and, in particular, by the findings of Drs. Kehrli and Spray.

**D.**   **Development of the Record**

Woodall contends the ALJ erred by failing to order a consultative evaluation to determine Woodall's mental capacity. Woodall, however, did not report mental impairments and has not complained of psychological symptoms to any treating or examining source.  In fact, he does not argue here that he has severe mental impairments, but merely contends the ALJ should have

16 -  OPINION AND ORDER

ordered a consultative evaluation before he determined Woodall

has no severe mental impairments.

As noted, Dr. Tatyrek performed a psychological consultation

in March 2002 as part of an evaluation for a pain-management

program.  Woodall reported a low level of depression and

significant frustration with his medical care.  On the Beck

Depression Scale and Beck Anxiety Inventory, Woodall responded in

a manner consistent with moderate levels of depression and

anxiety.  Tr. 268-69.

The ALJ considered Dr. Takyret's March 2002 psychological

consultation.  He noted Dr. Takyret's impression that Woodall was

experiencing psychological distress with moderate anxiety and

depression.  The ALJ also pointed out that Dr. Takyret did not

diagnose Woodall with a mental disorder nor identify any

functional limitations associated with these symptoms.

Tr. 23-24, 269.

An ALJ's duty to develop the record further is triggered

only when there is ambiguous evidence or when the record is

inadequate to allow for proper evaluation of the evidence.  *Mayes*

*v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  The Court

has not found any authority that extends the ALJ's duty to

develop the record as to undiagnosed conditions or to conditions

not asserted by the claimant.  Thus, here the ALJ did not have a

duty to develop the record of Woodall's psychological condition

17 -  OPINION AND ORDER

in the absence of some evidence that he suffers from a mental
disorder.  The ALJ gave due consideration to Dr. Tatyrek's
evaluation and the record as a whole; did not find the record
ambiguous or inadequate to properly evaluate Woodall's
psychological condition; and, therefore, reasonably concluded
Woodall's psychological condition did not significantly impair
his ability to perform basic work activities.  Tr. 24.

## II.   Adequacy of the Vocational Evidence

Woodall asserts the ALJ's defective RFC assessment led him
to elicit testimony from the VE based on a hypothetical that did
not accurately reflect all of Woodall's limitations.

At Step Five of the sequential process, the Commissioner
must show the claimant can do other work that exists in the
national economy.  *Andrews v. Shalala*, 53 F.3d at 1043.  The
Commissioner can satisfy this burden by eliciting the testimony
of a VE with a hypothetical question that sets forth all of the
claimant's limitations.  *Id.*  The assumptions in the hypothetical
question must be supported by substantial evidence.  *Id.*

Woodall asserts the ALJ's hypothetical question did not
include limitations in Woodall's mental capacities and his left
lower extremity.  The ALJ's hypothetical to the VE, however,
accurately reflected the findings in his RFC assessment.
Tr. 26-27, 469-70.

Accordingly, the Court concludes the ALJ did not err because
his hypothetical to the VE accurately reflected all of Woodall's
functional limitations reasonably supported by the record.

## III.  Role of Drug Dependency

Woodall argues the ALJ failed to evaluate properly the role
of substance abuse in Woodall's condition.

A claimant cannot be considered disabled if drug addiction
or alcoholism is a contributing factor material to the
determination of disability.  42 U.S.C. §§ 423(d)(2)(C),
1382c(a)(3)(J).  *See also Bustamante v. Massanari,* 262 F.3d 949,
955 (9th Cir. 2001).  If the ALJ finds a claimant disabled and
there is medical evidence of drug dependency in the record, the
ALJ must follow a particular procedure for determining whether
drug addiction is a contributing factor material to the finding
of disability.  20 C.F.R. §§ 404.1535, 416.935.  The implementing
regulations and governing authority make clear, however, that a
finding of disability must be made before the ALJ is required to
engage in the procedure for determining whether substance abuse
was a material factor.  *Bustamante,* 262 F.3d at 955.

Here the ALJ did not find Woodall disabled even while
dependent on drugs.  In fact, the ALJ found Woodall's drug
dependency caused only mild limitations in Woodall's
psychological functioning; *i.e.,* social functioning,

19 -  OPINION AND ORDER

concentration, persistence or pace, and activities of daily living.  Tr. 24.  Thus, the Court finds the ALJ did not err.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 27th day of March, 2006.


                                   /s/ Anna J. Brown
                                   _____
                                   ANNA J. BROWN
                                   United States District Judge